# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 Involuntary |
| HSH DELAWARE L.P., | Case No. 09-13145 (PJW) |
| Debtor. | |
| In re: | Chapter 7 Involuntary |
| HSH LUXEMBOURG S.À R.L., | Case No. 09-13146 (PJW) |
| Debtor. | |
| In re: | Chapter 7 Involuntary |
| HSH LUXEMBOURG COINVEST S.À R.L., | Case No. 09-13147 (PJW) |
| Debtor. | |

## MOTION OF HSH DELAWARE L.P., HSH LUXEMBOURG S.À R.L., AND HSH LUXEMBOURG COINVEST S.À R.L. TO CONVERT THEIR CHAPTER 7 CASES TO CASES UNDER CHAPTER 11 PURSUANT TO 11 U.S.C. § 706(a)

HSH Delaware L.P. ("HSH Delaware"), HSH Luxembourg S.à r.l. ("HSH Luxembourg"), and HSH Luxembourg Coinvest S.à r.l. ("HSH Luxembourg Coinvest" and together with HSH Delaware and HSH Luxembourg, the "Movants"), hereby submit this motion (the "Motion") for entry of an order converting these chapter 7 cases to cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), pursuant to section 706(a) of the Bankruptcy Code. In support of this Motion, the Movants rely on the *Affidavit of Daniel Katsikas in Support of Motion of HSH Delaware L.P., HSH Luxembourg S.à r.l., and HSH Luxembourg Coinvest S.à r.l. to Convert Their Chapter 7 Cases to Cases*

*Under Chapter 11 Pursuant to 11 U.S.C. § 706(a)*, filed contemporaneously herewith (the "Conversion Affidavit"), and further respectfully represent as follows:

## General Background

1. On September 8, 2009, ABN AMRO Bank N.V., ABN AMRO Bank N.V., London Branch, Commerzbank AG, Filiale Luxembourg, Lloyds TSB Bank plc, Calyon, The Royal Bank of Scotland plc, and Landsbanki Islands hf, (collectively, the "Petitioners") filed three involuntary petitions (collectively, the "Petitions") against the Movants in this Court seeking, *inter alia*, orders for relief under chapter 7 of the Bankruptcy Code. Answers controverting the Petitions were filed on September 29, 2009 by HSH Delaware, and September 30, 2009 by HSH Luxembourg and HSH Luxembourg Coinvest.

2. The Movants hereby have each consented to the entry of an order for relief against them pursuant to chapter 7 of the Bankruptcy Code.

3. On the date hereof (the "Commencement Date"), the Movants' related debtors, HSH Alberta I L.P. ("Alberta I"), HSH Alberta II L.P. ("Alberta II"), HSH Alberta V L.P. ("Alberta V"), HSH Coinvest (Alberta) L.P. ("Alberta Coinvest" and together with Alberta I, Alberta II, and Alberta V, the "Alberta Debtors"), JCF HSH (DE) GP LP, and HSH Delaware GP LLC (collectively, the "Voluntary Debtors"), each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Voluntary Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Moreover, on or around the Commencement Date, the Movants and the Voluntary Debtors filed the following first day pleadings: (i) *Debtors' Motion to Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases*; (ii) *Debtors' Motion for an Order (I) Authorizing Debtors to (A) Continue*

2

*Existing Cash Management Systems and (B) Maintaining Existing Bank Accounts and Business Forms, and (II) Granting an Extension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code*; (iii) *Debtors' Motion Pursuant to Section 1505 of the Bankruptcy Code for Authorization to Act as the Foreign Representatives of Their Estates in Canada*; and (iv) *Affidavit of Daniel Katsikas in Support of Debtors' Chapter 11 Petitions and Requests for First Day Relief.*

## Jurisdiction

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relevant Background

### A. The HSH Entities.

5. In 2006, J.C. Flowers & Co. LLC ("JCF") advised[1] seven investment vehicles in their collective acquisition from WestLB AG (the "Acquisition") of approximately 26% of the then-outstanding shares of HSH Nordbank AG ("HSH Nordbank"),[2] a large German bank with registered offices in Hamburg and Kiel, for an aggregate purchase price of €1.25 billion.[3] Each of the seven investment vehicles is an independent trust formed for the purpose of

---

[1] Since its inception in 2000, investment funds advised by JCF have invested over $10 billion in equity capital in more than 20 separate transactions. JCF advises three primary private equity funds, J.C. Flowers Fund I, J.C. Flowers Fund II and J.C. Flowers Fund III. Investors in J.C. Flowers Fund II participated in the Acquisition (defined below) and are the investors that are relevant to the matters discussed herein. Three funds, J.C. Flowers II LP, J.C. Flowers II-A LP and J.C. Flowers II-B LP, comprise J.C. Flowers Fund II. These funds' investors include high net worth individuals and institutional investors, among others.

[2] HSH Nordbank is a commercial bank that focuses on ship and aviation financing, international real estate lending, and large corporate banking. HSH Nordbank is the largest shipping bank globally by reported shipping loans - currently its balance sheet shows assets of approximately €186 billion.

[3] A majority of HSH Nordbank's shares have been held by the City of Hamburg and the State of Schleswig-Holstein. The remaining shares are held by German savings banks and entities owned by investors in funds advised by JCF.

3

indirectly acquiring and holding HSH Nordbank shares and whose beneficiaries are primarily investors in J.C. Flowers Fund II (the "Trusts").[4] The Trusts each formed a limited partnership or equivalent entity (the Alberta Debtors and the Movants, collectively, the "Shareholder Debtors")[5] through which to acquire and hold the HSH Nordbank shares. The reason this structure was used at the time of the Acquisition was in order to allow the Shareholder Debtors to be managed and controlled independently of one another, which was principally in order to avoid any regulatory delays with the Acquisition that might have arisen had J.C. Flowers Fund II been considered as controlling 25% or more of the shares in HSH Nordbank.

**B.** *The Credit Agreements.*

6. To partially finance the Acquisition, the Shareholder Debtors, as "Borrowers," each entered into virtually identical credit agreements, dated October 19, 2006, with ABN AMRO Bank N.V., London Branch ("ABN") as "Facility Agent" and ABN AMRO Bank N.V. as the original "Lender" (collectively, the "Credit Agreements"), to lend a total of €375,000,000.[6] The Credit Agreements were arranged and structured based upon a business plan that projected HSH Nordbank's future performance, stock dividends, and finance costs.

7. Under each Credit Agreement, there are two unsecured credit facilities. One is the term loan (the "Term Loan") that was used to finance the Acquisition. The Term Loans were required to be paid in full on October 19, 2011. Further, as the Shareholder Debtors

---

[4] As beneficiaries of the Trusts, investors in J.C. Flowers Fund II have at all times held in excess of 99.9% of the beneficial interest in Alberta I, Alberta II and Alberta V. Certain of these investors also elected to co-invest in the HSH Nordbank investment through a fourth Trust, and such co-investors own in excess of 99.9% of the beneficial interest in Alberta Coinvest. The *de minimis* balance of the beneficial interest in each case is held by the relevant limited partnership's general partners.

[5] The Shareholder Debtors are organized in different jurisdictions to accommodate the needs of certain of the Trusts' ultimate beneficiaries.

[6] Of this €375,000,000, €350,000,000 was actually funded on the date of closing pursuant to the Term Loans (defined herein) provided for in the Credit Agreements, with an additional €25,000,000 available pursuant to the Revolving Credit Loans provided for in the Credit Agreements.

do not generate any income other than any dividend payment from HSH Nordbank, the Credit Agreement also included revolving credit loans (the "Revolving Credit Loans") to be used as "bridge" facilities for servicing the interest accruing on the Term Loans during the period between dividend payment dates. Because the HSH Nordbank dividend was paid, at most, annually, and only if HSH Nordbank's balance sheet reflected a profit, the Revolving Credit Loans were necessary to fund the interest payments on the Term Loans. Each Revolving Credit Loan was to be for an agreed term of one, two, three or six months, and was required to be repaid in full on the last day of the term of such Revolving Credit Loan.

C. *The Negotiations to Restructure Obligations under the Credit Agreement.*

8. In connection with a recapitalization of HSH Nordbank in July 2008, the Shareholder Debtors, including the Movants, became aware of and notified Petitioners that certain financial covenant obligations, including an asset cover covenant and an interest cover covenant in the Credit Agreements, needed to be reset.

9. The parties thereafter engaged in negotiations to restructure the Credit Agreements in order to reset the financial covenant obligations and adjust the debt service terms on a going forward basis. During the negotiations, the Shareholder Debtors were faced with a January 2009 payment date, which included a Revolving Credit Payment and a payment on certain interest on the Term Loan. Issues related to debt service terms were the subject of the parties' negotiations, and, thus, the Shareholder Debtors believed it appropriate to have any amounts due for the January payment "rolled over" until a resolution was reached.

10. On January 20, 2009, ABN agreed in writing to "roll the loans forward for one month which will allow us [the parties] to continue to finalise [sic] our discussions on the term sheet during February ready for the new terms to commence thereafter." ABN thereafter continued, through further rollover notices delivered each month (sometimes twice a month) to

RLF1 3504548v.3

roll over the January payment throughout the course of negotiations. The last relevant rollover notices were received by each of the Shareholder Debtors in August 2009 and rolled the January payments through September 11, 2009. The negotiations were lengthy, in part, because another recapitalization of HSH Nordbank was being considered that was highly relevant to efforts to restructure the Credit Agreements. This recapitalization occurred in late June 2009. ABN supported the Shareholder Debtors' involvement in the recapitalization, which involvement considerably benefited ABN, because such recapitalization could have (but did not) dilute the Shareholder Debtors' (and, hence, the Petitioners') share interest in HSH Nordbank.

11. On June 16, 2009, and following roughly a year of negotiations, ABN notified the Shareholder Debtors that they were still considering the last restructuring proposal, and would get back to them after considering it and the recent recapitalization.

### D. *Petitioners' Acceleration of the Debt and Bankruptcy Filings.*

12. On September 8, 2009, and while the Shareholder Debtors were still awaiting a response to their latest restructuring proposal, ABN delivered acceleration notices to the Shareholder Debtors, in which immediate repayment of all amounts outstanding under the Credit Agreements was demanded, including the Term Loans that were not due until October 2011.

13. Within less than one hour, and without notice, the Petitioners unilaterally filed the involuntary petitions against the Movants, in addition to four winding-up petitions in the Cayman Islands against the general partners of the Alberta Debtors, seeking to liquidate all seven entities, and wrest control of the HSH Nordbank stock.

14. The Movants have decided to consent to the chapter 7 petitions and move to convert their chapter 7 cases to cases under chapter 11 of the Bankruptcy Code because

reorganization— not liquidation— is in the best interests of their bankruptcy estates and their creditors.

### Relief Requested

15.  Section 706(a) of the Bankruptcy Code provides, in relevant part that: "The debtor may convert a [chapter 7] case to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). By this Motion, and pursuant to section 706(a) of the Bankruptcy Code, Movants seek to convert their three chapter 7 cases to cases under chapter 11 of the Bankruptcy Code.

### Movants May Convert Their Cases as a Matter of Right

16.  The Bankruptcy Code unambiguously provides that a debtor has a broad right to convert a chapter 7 case to a case under another chapter. *See In re Murray*, 377 B.R. 464, 470 (Bankr. D. Del. 2007) ("The policy behind section 706(a) is that the debtor should always be given the opportunity to repay his debts.") (internal quotations omitted); *accord In re Martin*, 880 F.2d 857, 859 (5th Cir. 1989) (holding courts "have broadly construed the right of a debtor to convert"); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 425-26 (Bankr. S.D.N.Y. 2007) (granting conversion of chapter 7 involuntary case to chapter 11); *In re Interco Sys., Inc.*, 202 B.R. 188, 190 (Bankr. W.D.N.Y. 1996) ("Section 706(a) gives a Chapter 7 debtor acting in good faith the absolute right to convert to Chapter 11 if the case has not previously been converted."). A debtor may so convert as long as (i) under section 706(a), the case was not previously converted to chapter 7 pursuant to section 1112, 1208, or 1307 of the Bankruptcy Code, and (ii) under section 706(d), the debtor is eligible to be a debtor under the chapter to

7

RLF1 3504548v.3

which it wishes to convert. In this regard, in order to convert to chapter 11, the debtor must satisfy the requirements of sections 109(a) and (d) of the Bankruptcy Code.

17. Here, the cases originally were filed as chapter 7 cases; they were not converted to chapter 7. In addition, the Movants each are eligible under section 109(a) of the Bankruptcy Code to be debtors. *See* 11 U.S.C. § 109(a) ("[O]nly a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."). Specifically, the Movants each have bank accounts in the United States located at JPMorgan Chase Bank, N.A., the Movants' counsel holds a retainer on their behalf in a United States bank account, and HSH Delaware is a limited partnership organized under the laws of the state of Delaware. Further, the Movants are eligible to be debtors under chapter 11 specifically because, pursuant to sections 109(b) and (d) of the Bankruptcy Code, relief under chapter 11 is available to any "person"[7] that is not a railroad, bank, or insurance company. The Movants have thus satisfied the statutory requirements for conversion pursuant to section 706(a) of the Bankruptcy Code.[8]

## Notice

18. The Movants have served notice of this Motion on (i) the Office of the United States Trustee for the District of Delaware, and (ii) the attorneys for Petitioners. The Movants submit that no other or further notice need be provided.

---

[7] The term "person" includes individual, partnership, and corporation, *see* 11 U.S.C. § 101(41), and the term "corporation" includes "(i) association having a power or privilege that a private corporation, but not an individual or a partnership; possesses; (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association; (iii) joint-stock company; (iv) incorporated company or association; or (v) business trust." *See* 11 U.S.C. § 101(9)(A).

[8] The United States Supreme Court has recognized that the right to convert may be denied only in "extreme circumstances," such as those involving a debtor's bad faith attempt to conceal significant assets to defraud its creditors. *See Marrama v. Citizens Bank*, 549 U.S. 365, 374 (2007) (recognizing that "the vast majority of hundreds of thousands of individuals who file chapter 7 petitions each year" should enjoy an "absolute right to convert," but holding that "extraordinary cases" may exist where the debtor should be denied the right, such as where the debtor has hidden assets). No such extreme circumstance exists here.

## No Prior Request

19. No previous request for the relief sought herein has been made by the Movants to this or any other court.

WHEREFORE the Movants respectfully request that the Court enter an order, substantially in the from attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other further relief as it deems just.

Dated: January 21, 2010  
       Wilmington, Delaware

Respectfully submitted,

_____  
Mark D. Collins (No. 2981)  
John H. Knight (No. 3848)  
Lee E. Kaufman (No. 4877)  
Zachary I. Shapiro (No. 5103)  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
920 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 651-7700  
Facsimile: (302) 651-7701

*Proposed Attorneys for Movants*

9

RLF1 3504548v.3